**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| GREGORY TOBIAS, | ) | ED CV 13-1703-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **AND ORDER OF REMAND** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.


**PROCEEDINGS**


Plaintiff filed a complaint on September 19, 2013, seeking review of the Commissioner's denial of disability benefits.  The parties filed a consent to proceed before a United States Magistrate Judge on November 4, 2013.  Plaintiff filed a motion for summary judgment on

1  March 7, 2014.  Defendant filed a motion for summary judgment on

2  May 8, 2014.  The Court has taken the motions under submission without

3  oral argument.  See L.R. 7-15; Minute Order, filed September 25, 2013.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

7      Plaintiff asserts disability since January 29, 2010, based in

8  part on the allegedly deleterious mental effects of having suffered

9  strokes (Administrative Record ("A.R.") 85-86, 92-95, 108-09).  An

10 Administrative Law Judge ("ALJ") found Plaintiff has the following

11 severe impairments: "history of strokes; status-post mitral valve

12 replacement surgery; residual left side weakness; hypertension; and

13 ulcerative colitis" (A.R. 19).  However, the ALJ found Plaintiff's

14 alleged mental problems are not severe (A.R. 20-21).  Purporting to

15 consider all of Plaintiff's impairments, the ALJ found: (1) Plaintiff

16 retains an unlimited mental residual functional capacity;

17 (2) Plaintiff retains a limited physical residual functional capacity

18 sufficient for a restricted range of light work (A.R. 22);[1] and (3) a

19 ───────────────────

20      [1]    Specifically, the ALJ found:

21      [C]laimant can lift and/or carry 20 pounds occasionally
        and 10 pounds frequently; he can stand and/or walk for
22      six hours out of an eight-hour workday with customary
        breaks; he can sit for six hours out of an eight-hour
23      workday with customary breaks; he is unlimited with
        respect to pushing and/or pulling, other than as
24      indicated for lifting and/or carrying; the claimant can
        perform on a frequent basis reaching in all directions,
25      handling and fingering with the left upper extremity;
        he is not limited in the use of the right upper
26      extremity; the claimant must avoid extreme exposure to
        cold, heat, vibrations, dust, fumes, odors, gases, and
27      areas of poor ventilation; he must avoid moving
28                                              (continued...)

1  person with Plaintiff's residual functional capacity could perform
2  certain jobs identified by the vocational expert (A.R. 28; see A.R.
3  432-35).

4

5      In denying benefits, the ALJ rejected the opinion of consultative
6  psychological examiner, Dr. Douglas W. Larson, to the extent Dr.
7  Larson's opinion was inconsistent with the ALJ's residual functional
8  capacity determination (A.R. 20-27).   The Appeals Council considered
9  additional evidence submitted after the ALJ's adverse decision but
10 denied review (A.R. 6-9 (referencing A.R. 306-405)).

11

12                          **STANDARD OF REVIEW**

13

14     Under 42 U.S.C. section 405(g), this Court reviews the
15 Administration's decision to determine if: (1) the Administration's
16 findings are supported by substantial evidence; and (2) the
17 Administration used correct legal standards.   See Carmickle v.
18 Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,
19 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner
20 of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).
21 Substantial evidence is "such relevant evidence as a reasonable mind
22 might accept as adequate to support a conclusion."   Richardson v.
23 Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted);

24 _____

25      [1](...continued)
        machinery and heights; the claimant can occasionally
26      balance, stoop, kneel, crouch and crawl; and he can
        climb ramps or stairs, but he cannot climb ladders,
27      ropes and scaffolds.

28 (A.R. 22, 26-27).

1    see also <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

2

3      Where, as here, the Appeals Council considered additional

4 evidence but denied review, the additional evidence becomes part of

5 the record for purposes of the Court's analysis.  <u>See</u> <u>Brewes v.</u>

6 <u>Commissioner</u>, 682 F.3d at 1163 ("[W]hen the Appeals Council considers

7 new evidence in deciding whether to review a decision of the ALJ, that

8 evidence becomes part of the administrative record, which the district

9 court must consider when reviewing the Commissioner's final decision

10 for substantial evidence."; expressly adopting <u>Ramirez v. Shalala</u>, 8

11 F.3d 1449, 1452 (9th Cir. 1993)); <u>Taylor v. Commissioner</u>, 659 F.3d

12 1228, 1231 (2011) (courts may consider evidence presented for the

13 first time to the Appeals Council "to determine whether, in light of

14 the record as a whole, the ALJ's decision was supported by substantial

15 evidence and was free of legal error"); <u>Penny v. Sullivan</u>, 2 F.3d 953,

16 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this

17 information and it became part of the record we are required to review

18 as a whole"); <u>see generally</u> 20 C.F.R. §§ 404.970(b), 416.1470(b).

19

20                     **DISCUSSION**

21

22      The Administration materially erred in connection with the

23 evaluation of Plaintiff's alleged mental problems.  Remand is

24 appropriate.

25 ///

26 ///

27 ///

28 ///

4

I.    <u>**Summary of the Medical Records Relevant to Plaintiff's Alleged Mental Problems**</u>

Consultative examining psychologist Dr. Larson prepared a report dated June 29, 2010 (A.R. 168-74). Plaintiff complained of anxiety, depression, and difficulty with memory and concentration (A.R. 168-69). Plaintiff reportedly quit his job in January 2010 in part because he had been having increasing difficulties with his memory (A.R. 168-69). On examination, Plaintiff's affect was "somewhat bland," consistent with a history of stroke (A.R. 17-72). At times, Plaintiff's "word choices were a bit off," his "[t]hought processes were mildly slow," and memory results showed "significant scatter from the low average to average range" (A.R. 170, 172). Full-scale IQ testing indicated Plaintiff has "average" intelligence (Score 92), with "low average" working memory (Score 80), and "borderline" processing speed (Score 79) (A.R. 171). These results were consistent with Plaintiff's history of stroke (A.R. 172). Plaintiff's memory testing indicated some "significant memory deficits from his baseline level" and "difficulty processing auditory materials at times" (A.R. 172). Trails testing showed "significant errors" on Trails B, which was "very inconsistent" with Plaintiff's work history, but consistent with Plaintiff's history of stroke (A.R. 172-73).

Dr. Larson diagnosed Plaintiff with a cognitive disorder, not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") score of 55 because of the consequences of Plaintiff's strokes

///

///

(A.R. 173).[2]  Dr. Larson opined that Plaintiff would have mild limitations in his ability to: (1) understand, remember and complete simple commands; (2) interact appropriately with supervisors, co-workers or the public; and (3) comply with job rules such as safety and attendance (A.R. 174).  According to Dr. Larson, Plaintiff would have moderate limitations in his ability to: (1) understand, remember and complete complex tasks; (2) respond to changes in the normal workplace setting; and (3) maintain persistence and pace in a normal workplace setting (A.R. 174).

Non-examining state agency physicians reviewed Dr. Larson's report, but opined that Plaintiff: (1) is capable of understanding, remembering, and carrying out simple one- and two-step tasks; (2) can maintain concentration, persistence, and pace throughout a normal workday/workweek as related to simple tasks; (3) is able to interact adequately with coworkers and supervisors but may have difficulty dealing with the demands of "general public contact"; and (4) is able to "make adjustments" and avoid hazards in the workplace (A.R. 182-83, 194, 196-98; see also A.R. 221-22).  A non-examining reviewer's Psychiatric Review Technique form dated July 16, 2010, indicated that Plaintiff has a cognitive disorder, and would have mild restrictions

---

[2]    Clinicians use the GAF scale to report an individual's overall psychological functioning.  The scale does not evaluate impairments caused by physical or environmental factors. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)).  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace (A.R. 185, 192).  Other medical records document that Plaintiff has a history of "CVA" (cerebrovascular accident, _i.e._, stroke) in 2005 and 2007 (A.R. 159-60).

## II.  **Analysis**

Social Security Ruling ("SSR") 85-28[3] governs the evaluation of whether an alleged impairment is "severe":

> An impairment or combination of impairments is found "not severe" . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities. . . .
>
> Great care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work

---

[3]     Social Security rulings are binding on the Administration.  _See_ Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

1    activities, the sequential evaluation process should not end
2    with the not severe evaluation step.

3

4    If such a finding [of non-severity] is not clearly
5    established by medical evidence, however, adjudication must
6    continue through the sequential evaluation process.  SSR
7    85-28 at 22-23.

8

9    See also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (the
10   severity concept is "a de minimis screening device to dispose of
11   groundless claims"); accord Webb v. Barnhart, 433 F.3d 683, 686-87
12   (9th Cir. 2005).

13

14       In the present case, the medical evidence does not "clearly
15   establish [ ]" the non-severity of Plaintiff's alleged mental
16   problems.  Rather, the medical evidence, including the opinion of an
17   examining physician, appears to suggest that Plaintiff's alleged
18   mental problems cause more than "minimal" effects on Plaintiff's
19   mental ability to perform certain basic work activities.  Yet, the ALJ
20   not only found that Plaintiff has no severe mental impairment but also
21   found that Plaintiff retains an unlimited mental residual functional
22   capacity.  The ALJ's findings violated SSR 85-28 and the Ninth Circuit
23   authorities cited above.

24

25       The respect ordinarily owed to examining physicians' opinions
26   buttresses the Court's conclusion that the ALJ erred.  "The opinion of
27   an examining physician is . . . entitled to greater weight than the
28   opinion of a non-examining physician."  Lester v. Chater, 81 F.3d 821,

830 (9th Cir. 1995); see also Tonapetyan v. Halter, 242 F.3d 1144,
1149 (9th Cir. 2001) (consultative examiner opinion's based on
independent examination of the claimant constitutes substantial
evidence).   The ALJ does not appear to have given great weight[4] to Dr.
Larson's opinion that Plaintiff has significant mental limitations.
Rather, the ALJ appears largely to have rejected Dr. Larson's opinion,
stating the following reasons for this rejection: (1) the absence of
evidence of "treatment for mental health issues"; (2) Plaintiff's own
"Adult Function Report," which purportedly "showed that the claimant
enjoy [sic] a full range of activities of daily living";
(3) "generally unremarkable" findings from mental status examinations;
and (4) the ALJ's purported observation that, during the hearing,
Plaintiff "did not demonstrate or manifest any difficulty
concentrating" (A.R. 20-22, 24).   These stated reasons are not
supported by substantial evidence.

    With regard to reason (1), the Ninth Circuit has observed that
"it is a questionable practice to chastise one with a mental
impairment for the exercise of poor judgment in seeking
rehabilitation."   Nquyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.
1996) (citations and quotations omitted).   Perhaps more significantly
in the present case, when the alleged mental impairments are the
result of a stroke, there may be no efficacious treatment to address
the impairments.   See Trefcer v. Astrue, 2012 WL 2522147, at *4 (E.D.
Cal. June 27, 2012) (observing there were no treatment records for
claimant's stroke most likely because "any permanent effects of a

---

[4]     The ALJ expressly gave "only some weight" to Dr.
Larson's opinion (A.R. 21).

stroke would not be treatable") (citing http://www.webmd.com/stroke/
guide/stroke-treatment-overview).  Dr. Larson found that Plaintiff is
impaired by deficits in Plaintiff's working memory and processing
speed.  <u>See</u> A.R. 170-73.  Dr. Larson noted that Plaintiff might
benefit from vocational rehabilitation for "other useful work" that
would accommodate Plaintiff's limitations (A.R. 173-74).  However, Dr.
Larson did not suggest any kind of treatment that might improve
Plaintiff's mental performance.  Indeed, there is no medical opinion
in the record suggesting that any effective treatment exists for
Plaintiff's reported memory and processing speed deficits.  The
Administration cannot properly infer the nonexistence of the reported
deficits from a failure to obtain ineffective or nonexistent
treatment.  <u>See Lapierre-Gutt v. Astrue</u>, 382 Fed. App'x 662, 664 (9th
Cir. 2010) ("A claimant cannot be discredited for failing to pursue
non-conservative treatment options where none exist.")

     With regard to reason (2), the ALJ indicated that Plaintiff:
(1) could perform certain household chores, although Plaintiff
required more time than normal to perform these activities; (2) could
read, draw, watch television, use a computer and play dominoes; and
(3) reported no difficulty paying attention or "implementing" written
or spoken instructions (A.R. 24).  In fact, Plaintiff reported that he
sometimes needs to be given spoken instructions two or three times
(A.R. 131).  In any event, Plaintiff's reported daily activities are
not necessarily incompatible with Dr. Larson's opinion that Plaintiff
is mentally limited due to significant deficits in memory and
processing speed.
///

1    With regard to reason (3), the ALJ's characterization of Dr.

2  Larson's findings on examination as "generally unremarkable"

3  constitutes a mischaracterization of the record.  In fact, Dr. Larson

4  found "significant" abnormalities.  Dr. Larson found that Plaintiff

5  exhibited "<u>significant</u> memory deficits from his baseline,"

6  "borderline" processing speed, difficulty processing auditory

7  materials at times, and "<u>significant</u> errors" in trails testing, all of

8  which were consistent with the effects of stroke.  (A.R. 170-73

9  (emphasis added)).  An ALJ's material mischaracterization of the

10 record can warrant remand.  <u>See, e.g.</u>, <u>Regennitter v. Commissioner</u>,

11 166 F.3d 1294, 1297 (9th Cir. 1999).

12

13    Finally, with regard to reason (4), the ALJ's purported

14 observation that Plaintiff "did not demonstrate or manifest any

15 difficulty concentrating" during the hearing does not constitute

16 substantial evidence under the circumstances of this case.  An ALJ's

17 reliance on his or her personal observations of a claimant at the

18 hearing has sometimes been condemned as "sit and squirm"

19 jurisprudence.  <u>See</u> <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir.

20 1985); <u>but see</u> <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999)

21 ("Although this Court has disapproved of so-called 'sit and squirm'

22 jurisprudence, the inclusion of the ALJ's personal observations does

23 not render the decision improper.") (citations and internal quotations

24 omitted).  Cases condemning "sit and squirm" jurisprudence express a

25 concern that the ALJ, who is not a medical expert, may substitute his

26 or her own lay judgment in the place of a medical diagnosis.  <u>See,</u>

27 <u>e.g.</u>, <u>Graham v. Bowen</u>, 786 F.2d 1113, 1115 (11th Cir. 1986) (ALJ

28 improperly substituted his own opinion based on observations at the

1   hearing for the medical evidence presented); <u>Van Horn v. Schweiker</u>,

2   717 F.2d 871, 874 (3d Cir. 1983) (addressing the "roundly condemned

3   'sit and squirm' method of deciding disability," and stating that "an

4   ALJ is not free to set his own expertise against that of physicians

5   who present competent medical evidence") (citations omitted); <u>compare</u>

6   <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 & n.1 (9th Cir. 1985) (finding no

7   error where the ALJ's "observation of [the claimant's] demeanor was

8   relevant to his credibility and was not offered or taken as a

9   substitute for medical diagnosis").  The reported fact that Plaintiff

10  appeared to the ALJ to be able to concentrate and respond timely to

11  questioning at the hearing is no substitute for the objective tests

12  Dr. Larson performed, and provides scant support for the ALJ's

13  ultimate conclusion that Plaintiff is not disabled.

14

15      The Court is unable to deem the above-discussed errors to have

16  been harmless.  The residual functional capacity the ALJ adopted and

17  included in the hypothetical questioning of the vocational expert

18  assumed that Plaintiff has no mental limitations whatsoever.  <u>See</u> A.R.

19  22, 432-35.  The vocational expert did not testify whether there would

20  be any jobs performable by a person having significant mental

21  limitations in combination with Plaintiff's significant physical

22  limitations.  <u>See</u> A.R. 432-39.

23

24      Because the circumstances of this case suggest that further

25  administrative review could remedy the ALJ's errors, remand is

26  appropriate.  <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>see</u>

27  <u>generally</u> <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an

28  administrative determination, the proper course is remand for

additional agency investigation or explanation, except in rare
circumstances).


                              **CONCLUSION**


     For all of the foregoing reasons,[5] Plaintiff's and Defendant's
motions for summary judgment are denied and this matter is remanded
for further administrative action consistent with this Opinion.


     LET JUDGMENT BE ENTERED ACCORDINGLY.


          DATED: May 30, 2014.



                         _____/S/_____
                              CHARLES F. EICK
                         UNITED STATES MAGISTRATE JUDGE












_____

          [5]     The Court has not reached any other issue raised by
Plaintiff except insofar as to determine that reversal with a
directive for the immediate payment of benefits would not be
appropriate at this time.